Hamilton County, Ohio, Court of Insolvency.

(April Term, 1899.)

IN RE ASSIGNMENT OF MAX C. REEFER.

---

(1). There is no such thing in law as a vendor's lien relating to personal property.

(2). Where a machine is sold to be paid for when it was set up and had shown its capacity to do the work intended, the taking of a chattel mortgage for the purchase price after the machine has been tested and found satisfactory, *is not taking security for a pre-existing debt* within the meaning of sec. 6355, or 3206a, R. S., but part of the original contract of purchase.

(3). Such mortgage is a superior lien to the claims of the operatives of the insolvent mortgagor to preference under secs. 6355 & 3206a, R. S.

(4). Fees for counsel employed by assignee for benefit of creditors—What to be taken into consideration in allowing same.

---

FERRIS, J.

This matter comes now for a decision upon a motion to establish priorities, determine liens and for a distribution of the proceeds arising in the matter of the assignment of M. C. Reefer. A number of novel questions have been presented to the court, fairly raised by the state of facts disclosed by the testimony, and necessitate rulings, some of which seem reasonably clear from the authorities, others not so lucid as to make the court feel perfectly sure of its premises.

The following seems to be admitted: R. Hoe & Co., a firm or corporation doing business in the city of New York, entered into a contract of sale with M. C. Reefer of this city, by which a printing press was sold to M. C. Reefer in consideration of the sum of $7,000. The contract being in writing, discloses that a payment of $500.00 in cash was to be made as a condition precedent to shipment. $6,500 was to be evidenced by notes secured by a chattel mortgage, after the arrival of the printing press in the city of Cincinnati, and upon evidence to Reefer that the press had a capacity as warranted or agreed upon.

The correspondence shows that the sale was made in the city of New York, the price named F. O. B., N. Y. There does not seem to be any discussion as to the meaning of the expression F. O. B., free on board of cars.

The testimony discloses the fact that upon the arrival of the printing press in the city of Cincinnati, the agent or representative of Hoe & Co., acting under instructions to that effect from his principals, did, to the extent possible, take possession of the press, and for Hoe & Co. acted as representative, as the court construes the contract, for the purpose of carrying out the effect of the sale thereof.

It is now urged that under the facts shown, by virtue of the provisions of section 3206-a, as well as by virtue of the provisions of section 6355 of the Revised Statutes of Ohio, certain persons who rendered services for M. C. Reefer prior to the date of the giving of a chattel mortgage in November of

'96, obtained—there is some discussion here—a reference or a lien that antedates the chattel mortgage lien obtained by R. Hoe & Co., and that this court in the distribution of this fund, should find that by virtue of these two sections, priority as a matter of law, is to be given to these claims which are antecedent to and have stronger equity than the mortgage lien of R. Hoe & Co.

And it is urged that this court, by virtue of the finding had as the result of a suit instituted in the Superior Court of this city in replevin, is bound by the decree there entered, so far as all questions relating to "ownership and possession", and that therefore nothing remains but for this court to determine between the parties as to which has the prior lien.

The court is also asked in this connection, as growing out of this transaction, to find that upon the sum of $4.000 which the court has construed heretofore to be a fund in this court for distribution, that upon such amount the assignee is entitled to have his commissions estimated, and it is urged that the principles laid down in Stone v. Strong, 52 Ohio St., as well as the case of Shaw, Trustee, v. The Building Association, 5 Circuit Court Reports, and the recent case of Johns v. Andrews, do not apply as to personal property, and that therefore the assignee is entitled to his commissions estimated upon the $4000.

It is also urged that inasmuch as the equitable title to the property in any event was in the assignee, and that the value of such equity could not be determined until sale, that such services as were rendered by the attorney are entitled to be paid out of the $4000, being the amount of the assigned estate.

These claims, both as to commissions and as to counsel fees, are denied by Hoe & Co., who urge that the analogy between the proceeds of the sales of property, real and personal, is so strong as to bear such a veri similitude as that the court will apply the rules laid down in Johns v. Andrews and other cases heretofore mentioned.

The court coming now to determine these matters, speaks first of those questions about which there can be no serious discussion. The action prosecuted in the Superior Court in Cincinnati, determined the right of the parties at the time of the institution of the suit, and the court therein found that the assignee was entitled to possession of the property in question; its value was fixed at $4000, but the court being entirely without jurisdiction, could not and did not attempt to pass upon any questions relating to priority, did not establish any of the liens, and could not under the rulings have made any order of distribution.

The fund therefore is before this court simply and solely for the purpose of determining what charges are proper in the distribution of the fund, and to that end must establish priorities.

Considering first—because it is foremost in importance and pivotal as to the majority of the questions before the court—what was the transaction as shown by the testimony? Irrespective of the very great help that has been given to the court by singularly able briefs, and leaving entirely out of consideration all questions of law, the facts in this case seem perfectly plain

R. Hoe & Co. entered into a contract that was simple and not open, in the judgment of the court, to any reasonable doubt as to its meaning. In consideration of the sum of $7,000 the press was sold; $500 of which was to be paid in cash. $6500 was to be paid when the press gave satisfaction and showed that it was up to the guaranty. All that was done from the time that this contract was entered into was, in the judgment of the court, part and parcel of that which was necessary to be done to complete the contract as originally agreed upon. The press had shown its capacity to print a certain number of papers prior to the time of the execution of the mortgage; it had shown its capacity to do that which was the extent of the warranty, namely, the printing of the Sunday paper in volume, in size; and while it may have been a pre-

text used by Reefer for the purpose of delaying the time of the execution of the notes and mortgage, yet there can be no question but that there was no time between the date of the sale in New York, and the time of the execution of this chattel mortgage, when it was not the legal right of Hoe & Co. to have insisted upon a compliance with the contract of sale after the time that the property in the possession of Reefer had shown its capacity to cover the warranty.

The court has examined very carefully all of the cases referred to by counsel, including particularly, "Benjamin on Sales", for the purpose of determining whether there are any rules of law that would interfere with the plain reading of this contract—that would interfere with its execution. There can be none, for the principle is well settled both upon reason and authority, and the court is of opinion from such authority as well as from the reason, that this contract is not susceptible of any other interpretation than that Hoe & Co. were instituting a proceeding that was their right under the original contract, when they secured the mortgage covering the $6500.

The court has gone fully into this matter for the purpose of reaching the conclusion as to whether, under section 6355, it can be successfully urged that this security was given to cover a pre-existing debt. Counsel has properly defined that expression's meaning, and has also made a distinction—not, however, a difference—between the expression "preference" and the expression "lien", and while the statute itself clearly recognizes the existence not only of a mortgage lien, but an equitable lien, a vendor's lien, those liens that are statutory, clearly marked out, leave no question whatever that the contention is right. There is no such thing in law as a vendor's lien relating to personal property, and that the lien that was obtained by Hoe & Co. does not need equitable consideration to support it. When you speak of liens you are then in the domain of equity, because you speak of a mortgage lien determined clearly by the terms of a statute expressed and not to be misunderstood.

Hoe & Co. did all and singular the things that were necessary to obtain a mortgage lien in satisfaction of a contract of sale, not to recover a pre-existing debt, but as part and parcel of the performance of a contract entered into in good faith and for a proper consideration, needing no subsequent consideration to support the mortgage in question.

Now there have been attempts in times past to reconcile the differences arising from the reading of section 3206-a and section 6355, but the results are the same in all cases. Men will always differ with reference to the consideration of these two sections.

But in my mind as applicable to the case at bar there can be no doubt of the conclusion, or that 6355, although first passed in order of time as to 3206-a, was to grant a preference and not to disturb a lien.

If, therefore, the court is right in concluding that the mortgage lien of Hoe & Co. was for a valuable consideration, and not within any of the exceptions of 6355, then the single question remains as between these laborers who performed these services—were such acts done as would invalidate that preference? It is urged that Hoe & Co. were not diligent in the exercise of their rights; that they permitted property to be in possession of Reefer so as to permit a claim to arise that was superior to the rights of all parties, and that such conduct worked an irreparable injury to parties who were in the employment of Reefer, presuming that he was the owner of that property and on the strength and faith of which rendered services to him, and that therefore the equitable doctrine should apply, that where mischief or an injury was caused by two persons, the one who was the most responsible agent in producing it should suffer, the one who is least responsible should have the advantage; that there being a fund about which there is a contention, whether Hoe & Co., claiming a superior lien to that of the laborers, such claim should not be recog-

nized by the court in view of such circumstances.

The testimony itself does not warrant such a conclusion. So far as it was possible, Hoe & Co. did, in the judgment of the court, exercise vigilance; physical possession was impossible, and yet it appears that the representative of Hoe & Co. was unusually diligent in attempting to exercise whatever rights seemed to be possible, in order to secure Hoe & Co.'s claim. As the court has said, physical possession was impossible, but to the extent that the agent could exercise a right of possession, in the judgment of the court, that was done.

So that the court comes now to conclude that as between the mortgage claim of Hoe & Co., and the claim of the laobrers under section 6355, the claim of Hoe & Co. is superior to the claim of the operatives; and, as against that fund, no distribution can be had that would affect the claim of Hoe & Co.

We come now to a more difficult question, namely: the determination of the counsel fees and attorney fees relating to this assignment.

The assignee has asked for a commission on $4000, being the amount that has been heretofore decided by the court to be here for distribution. The language of the act authorizing the payment of commissions is peculiar and may be understood in the light of the provisions relating to estates of decedents. It has been held that an assignee is entitled to six per cent, four per cent and two per cent—six per cent. upon the first thousand, four upon the next four thousand and two per cent. upon the balance, and it is not within the province of this court to increase or diminish it even in the case of mal-administration. The expression by the circuit court in the Purcell mattter has been determined to be mandatory so far as this court is concerned.

I do not stop to consider the reasons—counsel are thoroughly familiar with them and with that decision; but this, upon the theory that the sum was received and accounted for to the distributees of an estate, the

reasoning that is employed in the Stone v. Strong case and the Shaw, Trustee, case, and in the case of Johns v. Andrews, relating to real estate, is, in the judgment of the court, equally applicable with relation to personal property. The theory upon which said sum is allowed, is that the mortgagee is not the purchaser, but that the sum actually passed into the hands and was received by and accounted for by the officer of the court, as a distributable fund. The sum allowed to the assignee is based upon the amount received and accounted for by him, not to a successor in trust, and certainly not to be allowed when no such fund did as a matter of fact pass into his hands the receipt of which would make him accountable under his bond. But the principle is, as stated in the Johns case, clearly applicable, in the opinion of the court, to matters relating to the distribution of funds arising from the sale of personalty as well as realty.

But there has grown to be a custom that in rulings of the court with relation to the percentum to be allowed that the doctrine of *quantum meruit* should govern, and it is upon this theory that the court makes an allowance to the assignee, who by virtue of his position as counsel for the assignor, has also made a claim for services as such. This is entirely proper, and a reasonable sum must be allowed. The assignee was perfectly right —so determined by the Superior Court —in resisting the action in replevin, and for such services, he being charged with the responsibility of protecting the interests of the creditors in that fund to whatever extent it was necessary, rendered services which were proper, and under the provisions of section 6357 must be a charge upon this trust fund. An itemized bill is required in such cases, showing that the services of the counsel, first, were actually rendered; second, that they were in the interests of the trust; third, that the amount charged is reasonable and not more than is customary to be charged; and, fourth, that the sum charged is actually paid —all of which does appear from the

[COPYRIGHT, 1899, BY CARL G. JAHN.]

testimony, and nothing remains therefore, but to determine some amount that, under all of the circumstances, would be a proper charge against the trust esstate.

Briefly, what ought to enter into a discussion of the elements that go to make up a proper charge in a question of this character? By some there has been a contention that the amount involved ought to be taken into consideration by the court; possibly that is true, but it should not exercise a controlling effect. Counsel *per se* are not responsible finally for any loss that may occur in the administration of a trust estate, and therefore the amount involved certainly ought not to be pivotal in determining the value of the services rendered. Again, counsel may not be paid out of a trust estate for the doing of those things required by law of an assignee as such. While it may have been necessary for the assignee to have attended personally to the condition of things on the first day of the assignment, as shown by the testimony, yet for such service, in the judgment of the court, no such amount as charged should be allowed.

It is also urged that the nature of the litigation was such as to require exhaustive examination of authorities, and that the seriousness of the questions involved required the examination into very many legal questions requiring time and skill and the employment diligently by counsel to the end that the trust might be preserved.

It is the judgment of the court that the services in the Superior Court as well as in the conduct of the matter relating to distribution, were of a character requiring the services of counsel, and that those services ought to be paid for, not liberally, for the reason that the court is of opinion from the nature of the matter now being passed upon, that generosity ought not to be exercised when practically the entire estate was the proceeds of the printing press. Justice to Hoe & Co. demands the smallest expense account possible.

Taking that fact into consideration, then, we have an assignment made of the printing press that was the property of R. Hoe & Cc., and the application of the rules of law as here stated by the court, do not, in the opinion of this court, justify the adoption of any liberal rule. After full consideration, and taking into consideration also the things that have been expressly set forth, the court is of opinion that the assignee, for his services in the entire estate, together with his fees as counsel, should be and is allowed the sum of $250.00.